NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAMELA NICHOLSON, | |
| Plaintiff, | Hon. Garrett E. Brown, Jr. |
| v. | Civil Action No. 10-750 (GEB) |
| COMMISSIONER OF SOCIAL SECURITY | **MEMORANDUM OPINION** |
| Defendant. | |

**BROWN**, Chief Judge:

      This matter comes before the Court upon Plaintiff Pamela Nicholson's appeal of the adverse October 16, 2006 administrative decision issued by Administrative Law Judge (ALJ) Dennis O'Leary, which denied Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the "Act") for the time period June 30, 2000–December 30, 2003.  The Court has jurisdiction over this Social Security Appeal pursuant to 42 U.S.C. § 405(g), and has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, the Court will vacate the October 16 decision and remand for further administrative proceedings.

**I.    BACKGROUND**

      Plaintiff originally filed an application for DIB on March 20, 2000, alleging disability in the form of a displaced cervical disc at C5-C6 that was caused by a car accident in February 1999.  Shortly thereafter, Plaintiff underwent an anterior cervical discectomy operation at

vertebrae C4-5 and C5-6 on March 29, 2000.  Plaintiff's application was denied at the initial and reconsideration levels, but after a hearing on January 23, 2002, ALJ O'Leary issued a partially favorable decision on May 17, 2002 ("2002 administrative decision"), granting Plaintiff's application for DIB for the period March 12, 1999–June 29, 2000, but denying DIB effective June 30, 2000, finding that Plaintiff had medically improved by this date and was no longer disabled.  (*See* Tr. 15–25.)  The Appeals Council denied review in March 2004.  Plaintiff appealed, and this Court reversed the 2002 administrative decision via consent order on July 29, 2005, and remanded the case to the Commissioner of Social Security for further administrative action.

On remand, the Appeals Council affirmed the favorable portion of the 2002 administrative decision (granting benefits from March 1999–June 2000) and vacated the adverse portion (denying benefits from June 30, 2000, forward), with instructions that the ALJ reassess disability for that period, in light of a new application for DIB that Plaintiff filed on June 25, 2004.  Pursuant to the Appeals Council's remand order, the ALJ held a second hearing on September 6, 2006, and on October 16, 2006 ("October 2006 administrative decision"), ALJ O'Leary issued a second partially favorable decision that granted benefits beginning December 31, 2003,[1] but denied benefits from June 30, 2000–December 30, 2003, again finding that Plaintiff had medically improved and was no longer disabled during this period.  The Appeals Council again denied review of Plaintiff's claim on December 8, 2009, and Plaintiff filed the instant appeal with this Court on February 9, 2010.

---

[1] The ALJ based the award of benefits for this period on Plaintiff's psychiatric condition, not a worsening of her residual functional capacity.  (Tr. at 374.)

Plaintiff only appeals the adverse portion of the October 2006 administrative decision, which denied benefits for the time period June 30, 2000–December 30, 2003, on the grounds of medical improvement. Plaintiff advances three primary arguments on appeal: (1) that the ALJ failed to perform a task-by-task comparison with Plaintiff's residual functional capacity (RFC) and her prior work as a paralegal, as required by the Appeals Council's remand order; (2) that the ALJ's RFC determination contradicted the medical evidence of record; and (3) that the ALJ failed to evaluate Plaintiff's subjective claims of pain under the guidance of 20 C.F.R. § 404.1529. Cumulatively, Plaintiff argues that the ALJ's decision is not supported by substantial evidence, and Plaintiff requests that this Court either award the benefits denied or remand for a new hearing. The Commissioner of Social Security responds: (1) that substantial evidence supports the ALJ's denial of benefits from June 30, 2000–December 30, 2003 on the basis of medical improvement; (2) that the ALJ properly assessed Plaintiff's subjective complaints of pain; and (3) that the ALJ properly determined that Plaintiff could return to her past relevant work during this time period.

## II.   DISCUSSION

### A.  Standard of Review

The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists when there is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings,

"even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir.2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.1999)).

However, the "determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir.1978) (internal citation omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. *Fargnoli*, 247 F.3d at 42. The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984)).

    B. Legal Framework of the Act

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability. 20 C.F.R. § 404.1520. In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, her application for disability benefits is automatically denied. *Id.* If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. *Id.* Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing"). *Id.* § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. *Id.* § 404.1520(a)(4)(iii), (d). If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is found capable of performing her previous work, the claimant is not disabled. *Id.* If the claimant is no longer able to perform her prior line of work, the evaluation must continue to the last step. The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must consider the RFC assessment,

together with claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(g). Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing her past work or some other type of work in the national economy because of her impairments.

The application of these standards involves shifting burdens of proof. The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits. *Id.* If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits. *Id.* If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents him from performing his past work." *Id.* Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Id.* The step five analysis "can be quite fact specific." *Burnett v. Commissioner*, 220 F.3d 112, 126 (3d Cir. 2000).

C.  *The ALJ's Decision Was Not Based Upon Substantial Evidence In the Record*

Both Plaintiff and the Commissioner contend that substantial evidence supports their position regarding Plaintiff's RFC status during the time period June 30, 2000–December 30, 2003. The Court finds that the ALJ's adverse determination for this period was not supported by substantial evidence.

The primary problem with the ALJ's October 16, 2006 opinion is that it failed to identify specific medical evidence supporting the ultimate RFC determination. The ALJ determined Plaintiff to have an RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567, finding that Plaintiff had the following exertional capabilities: being able (i) to lift and carry up to 10 pounds occasionally and 5 pounds frequently; (ii) to stand and/or walk up to 2 hours in an 8-hour day; and (iii) to sit up to 6 hours in an 8-hour day. (Tr. at 374.) In reaching this determination, the ALJ acknowledged the following contrary medical evidence: (1) the June 2001 report of Plaintiff's treating surgeon, Dr. Chimenti, who claimed that Plaintiff could not do any work and had not made significant progress; (2) Dr. Chimenti's April 2002 report, which asserted that Plaintiff could work, sit, stand, and walk 3 hours per day, and that she could lift and carry up to 20 pounds occasionally and 10 pounds frequently; and (3) Dr. Pelman's November 30, 2001 report that concluded that Plaintiff's motion of the cervical and lumbosacral spines was reduced to 60% of normal, that pain and spasm were present in the lumbar region, and that Plaintiff was disabled and unable to work as a paralegal. (Tr. at 373–75.)[2] Against these proofs, the ALJ cited Dr. Adams October 3, 2001, neurological evaluation and the progress reports of Plaintiff's treating physical therapist, Mr. Parente, as well as medical reports from 2004 and later. (Tr. at 374–75.) The ALJ emphasized that Dr. Adams' report "noted only mild limitation of motion of the cervical spine, 5/5 or 5-/5 muscle strength throughout, normal gait, station and coordination, and essentially normal sensory examination," but acknowledged that Dr. Adams "note[d] that

---

[2] The ALJ also acknowledged the contrary findings of the July 16, 2004 and November 22, 2005 reports of Plaintiff's primary care physician, Dr. Kelsey, who determined that Plaintiff had an RFC for less than sedentary work. (Tr. at 374.) Because these reports addressed Plaintiff's condition after the relevant time period (2000–2003) on appeal, they are not relevant to this Court's review of the ALJ's decision.

7

[Plaintiff] had a problem with stamina and fatigue." The ALJ discounted the limitations identified by Dr. Adams' report on the basis of Mr. Parente's "subsequent report," which "note[d] that [Plaintiff] reported aggravation of her upper and lower extremity symptoms with strenuous activity or prolonged sitting." (*Id.*) The ALJ further relied on Mr. Parente's reports, which claimed that Plaintiff's "overall condition and endurance was fair, . . . [that she had] full motion of the lumbar spine, and negative straight leg raising, and concluded that [Plaintiff's] main limiting factor was her complaints of pain in the upper and lower extremities." (*Id.*) Elsewhere in the opinion, the ALJ appears to rely upon the July 25, 2000 report of Dr. Beck, which stated that Plaintiff "reported that she feels that her pain is 30-40% better," and acknowledged that Plaintiff had "no gait deviations, good posture, and normal curves over the thoracolumbar spine. . . . full motion at all spinal levels with pain in the cervical region on most motions and in the lumbar region with flexion," and an ability "to walk on heels and toes and . . . squat." (Tr. at 364–65.) The ALJ recognized that the same report also stated that Plaintiff "has constant neck pain, which she grades as 5/10," that this pain "increases to 7/10 with increased standing or sitting for more than 3 to 5 minutes," and that Plaintiff's condition was "cervical radiculopathy, status-post discectomy and fusion, mild impairment," with "possible lumbar radiculopathy with mild impairment." (*Id.*) The ALJ concluded that the contrary medical evidence presented in the reports of Dr. Chimenti, Dr. Kelsey, and Dr. Pelman was entitled to lesser evidentiary weight because Dr. Chimenti stopped seeing Plaintiff as a patient in April 2002, Dr. Kelsey is not an orthopedist, and Dr. Pelman's observation was based on a single observation.

      The Court discerns no fundamental error in the ALJ's determination that this contrary

medical evidence was not persuasive; yet, the ALJ did not identify, or purport to rely upon, medical evidence from 2000–2003 that indicated that Plaintiff did have the exertional capabilities for his ultimate RFC determination (sedentary work) for this time period. Dr. Beck's July 2000 report was the closest medical evidence to the beginning of the relevant time period (June 30, 2000); yet, the portion of this report cited by the ALJ cannot be fairly read to assert that Plaintiff had the exertional capabilities for sedentary work identified by the ALJ (lift/carry up to 10 lbs. occasionally, 5 lbs. frequently; stand/walk up to 2 hours and sit up to 6 hours in 8-hour day). Nor can Dr. Adams' October 2001 report, which was prepared more than a year after the beginning of the time period on appeal. Indeed, the first medical evidence cited by the ALJ that grapples with Plaintiff's exertional capabilities in these terms was Dr. Chimenti's April 2002 report, which indicated that Plaintiff could work, sit, stand, and walk 3 hours per day, respectively, and lift and carry 20 pounds occasionally, 10 pounds frequently. The ALJ reasoned that "[s]uch lifting and carrying ability alone would represent an improvement from less than sedentary work." (Tr. at 374.) However, this report, which suggests that Plaintiff has some of the exertional capabilities for sedentary work, speaks to Plaintiff's condition almost two years after the beginning of the relevant period on appeal. The ALJ did not present medical evidence of such exertional capabilities prior to April 2002.

      Mr. Parente's progress notes from April–October 2000 do not fill in this evidentiary gap. The Commissioner concedes that, pursuant to Social Security Ruling 06-03p, a therapist is not an acceptable medical source, but is an "other source" that "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." (Comm'r Br. at 19 n.4 (citing SSR 06-03p).) Other sources, however, "cannot establish the existence of a medically

9

determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose." SSR 06-03p. Under this standard, it does not appear that a physical therapist's prognosis, alone, could overcome evidence of physical impairment by acceptable medical sources, like Drs. Chimenti, Kelsey, and Pelman. But even if it could, the portions of Mr. Parente's progress notes cited by the ALJ do not speak to Plaintiff's exertional capabilities to work, stand, sit, or walk over prolonged periods of time.[3] (*See* Tr. at 364–65 (recognizing that Mr. Parente's progress reports from April–October 2000 noted improved ranges of motion, strength, and occasional pain), 372, 375.)

In light of the evidence relied upon by the ALJ, his determination that medical improvement occurred as of June 30, 2000, as opposed to a later date between 2000 and 2003, appears to be arbitrarily based on the beginning of the application period remanded for reconsideration rather than substantial evidence of record. However, the Court disagrees with Plaintiff that her disability during this time period was clearly established, such that this Court could reverse the ALJ's decision and award benefits. *See, e.g.*, *Caffee v. Schweiker*, 752 F.2d 63, 68 (3d Cir. 1985). The Commissioner points out that the Administrative Law Judge's RFC determination is consistent with the October 31, 2000 RFC assessment provided by state agency physician Dr. Belskey, which stated that Plaintiff could sit for about 6 hours per 8-hour workday and could lift 10 pounds frequently and 20 pounds occasionally. (Comm'r Br. at 18 (citing Tr. 259).) The ALJ did not rely on this assessment, and it is not for this Court to review the record evidence *de novo* to find evidence supporting the ALJ's determination. *See, e.g.*, *Fargnoli*,

---

[3] Indeed, the ALJ's October 2006 opinion acknowledged that Mr. Parente's October 19, 2001 progress report noted that Plaintiff's "chief limiting factor was her complaints of pain in the upper and lower extremities." (Tr. at 366.)

10

247 F.3d at 44 n.7 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).  As it is, the Administrative Law Judge's decision may not stand, and this Court will vacate the ALJ's October 2006 administrative decision and remand the matter to the Commissioner for further administrative proceedings.

This Court's conclusion to remand does not speak to the merits of the ALJ's ultimate RFC determination.  On remand, the ALJ may determine that Plaintiff was or was not disabled for all or a portion of the time period June 30, 2000–December 31, 2003, if substantial evidence supports such determination.

### III.  CONCLUSION

For the aforementioned reasons, the Court will vacate the October 16, 2006 administrative decision and remand for further administrative proceedings.  An appropriate form of order accompanies this Memorandum Opinion.


Dated: March 21, 2011

       /s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.